FILED

APR 25 2006
APR 25 2006
JUDGE CHARLES R. NORGLE
U.S. District Court Judge

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | No. 05 CR 209 |
| ) | Judge Charles R. Norgle, Sr. |
| JUAN RODRIGUEZ ) | |

## PLEA AGREEMENT

This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and the defendant, JUAN RODRIGUEZ, and his attorney, GERALD COLLINS, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure.

This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 05 CR 209.

This Plea Agreement concerns criminal liability only, and nothing herein shall limit or in any way waive or release any administrative or judicial civil claim, demand or cause of action, whatsoever, of the United States or its agencies. Moreover, this Agreement is limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities except as expressly set forth in this Agreement.

By this Plea Agreement, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, and the defendant, JUAN RODRIGUEZ, and his attorney, GERALD COLLINS, have agreed upon the following:

1. Defendant acknowledges that he has been charged in the indictment in this case with conspiring to knowingly and intentionally possess with intent to distribute a controlled substance, namely, in excess of 100 grams of mixtures containing heroin, a Schedule I Narcotic Drug Controlled Substance, and in excess of 500 grams of mixtures and substances containing cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1), all in violation of Title 21, United States Code, Section 846 (Count One); with knowingly and intentionally possessing with intent to distribute a controlled substance, namely, in excess of 100 grams of mixtures containing heroin, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 2 (Count Two); and with knowingly and intentionally possessing with intent to distribute a controlled substance, namely, mixtures and substances containing cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) (Count Three).

2. Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

3. Defendant fully understands the nature and elements of the crime with which he has been charged.

4.     Defendant will enter a voluntary plea of guilty to Count One of the indictment in this case.

5.     Defendant will plead guilty to Count One of the indictment because he is in fact guilty of the charge contained in Count One of the indictment. In pleading guilty, the defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

With respect to Count One, on or about March 3, 2005, at Willowbrook, in the Northern District of Illinois, Eastern Division, defendant knowingly and willfully did conspire with MARTHA VERGARA-VILLALOBOS, and with others, to knowingly and intentionally possess with intent to distribute a controlled substance, namely, in excess of 100 grams of mixtures containing heroin, a Schedule I Controlled Substance, and in excess of 500 grams of mixtures and substances containing cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1), all in violation of Title 21, United States Code, Section 846.

Specifically, at approximately 10:00 a.m. on March 3, 2005, VERGARA-VILLALOBOS had a telephone conversation with Individual A to discuss Individual A's purchase of 250 gross grams of heroin from defendant and VERGARA-VILLALOBOS. Unbeknownst to defendant, Individual A was cooperating with DEA agents, and the telephone call was recorded. During the telephone call, VERGARA-VILLALOBOS and Individual A arranged Individual A's purchase of the 250 grams of heroin, as well as the sale

of two kilograms of cocaine. During the conversation, Individual A and VERGARA-VILLALOBOS agreed to meet, together with defendant, at approximately 11:00 a.m. at a Denny's Restaurant, located at 7737 Kingery Hwy., in Willowbrook, IL.

Shortly after the telephone conversation with Individual A, at approximately 10:27 a.m., defendant arrived at VERGARA-VILLALOBOS's residence in a blue Ford Thunderbird and picked VERGARA-VILLALOBOS up. Defendant and VERGARA-VILLALOBOS agreed to go to the Denny's in order to negotiate the exchange of 250 grams of heroin in their possession for approximately two kilograms of cocaine. Defendant and VERGARA-VILLALOBOS drove to the Denny's restaurant in Willowbrook, Illinois, and arrived at approximately 11:00 a.m. Inside the Denny's restaurant, VERGARA-VILLALOBOS, defendant, and Individual A met to discuss the terms of a sale of the heroin by defendant and VERGARA-VILLALOBOS to Individual A. Unbeknownst to defendant and VERGARA-VILLALOBOS, the conversation among Individual A, VERGARA-VILLALOBOS and defendant inside the Denny's restaurant was monitored and recorded by DEA agents via a body wire worn by Individual A. During the conversation, defendant and VERGARA-VILLALOBOS attempted to negotiate with Individual A to exchange the 250 grams of heroin they possessed for two kilograms of cocaine. During the negotiation, defendant stated that he and VERGARA-VILLALOBOS wanted to exchange the seven and a half (7 ½) ounces of heroin for the two kilograms of cocaine. Individual A advised defendant and VERGARA-VILLALOBOS that each kilogram of cocaine would cost

$18,500.00, thus bringing the total to $37,000.00. Individual A further explained that even if they were to make the trade, defendant and VERGARA-VILLALOBOS would still owe Individual A the $12,000 difference between the cost of the heroin and the cocaine. Individual A declined to make the exchange, and agreed instead to buy the heroin from defendant and VERGARA-VILLALOBOS for $25,000.

At approximately 11:48 a.m., Individual A and VERGARA-VILLALOBOS left the restaurant and continued to talk outside in the parking lot near the blue Ford Thunderbird. Minutes later, defendant joined Individual A and VERGARA-VILLALOBOS outside the restaurant. Defendant and VERGARA-VILLALOBOS then returned to their car and showed the heroin to Individual A. Defendant and VERGARA-VILLALOBOS remained in their car and waited for Individual A to provide them with a $25,000 payment for the heroin, which they had shown Individual A and was in the car with them.

Defendant and VERGARA-VILLALOBOS were then arrested. In the car, defendant and VERGARA-VILLALOBOS had a clear plastic bag, which contained a large piece of aluminum foil. Within the aluminum foil was approximately 238 grams of heroin. VERGARA-VILLALOBOS also had a digital scale in her jacket pocket.

Subsequent to defendant's arrest, and after being read his Miranda rights, defendant verbally consented to the search of his residence, 6706 Echo Lane, Apartment #1, Willowbrook, Illinois. During a search of defendant's bedroom, a small baggie containing

numerous individually wrapped packages of cocaine was found, which defendant acknowledges were his.

6. The calculations listed below to determine the advisory guidelines range are governed by the November 2005 Guidelines Manual promulgated by the United States Sentencing Commission pursuant to Title 28, United States Code, Section 994. The parties agree on the following points:

(a) Pursuant to Guideline § 2D1.1(a)(3), the base offense level is level 28 because the amount of heroin involved in the offense is between 100 grams and 400 grams, and the amount of cocaine involved is between 2 kilograms and 3.5 kilograms. This results in a marijuana equivalency of 638 kilograms, which is at least 400 kilograms, but less than 700 kilograms of marijuana.

(b) Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if the defendant continues to accept responsibility for his actions, within the meaning of Guideline § 3E1.1, a two-level reduction in the offense level is appropriate.

(c) Defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently, within the meaning of Guideline 3E1.1(b). Accordingly, at the time of defendant's sentencing hearing, the government will move for

an additional 1-level reduction in the offense level, provided the Court determines the offense level to be 16 or greater prior to the operation of Guideline 3E1.1(a).

(d) Based on the facts known to the government, defendant's criminal history points equal zero and his criminal history category is I.

(e) Based on the facts known to the government, the parties agree that the defendant has satisfied the criteria set forth in subdivisions (1)-(5) of Guideline § 5C1.2, and 18, United States Code, Section 3553(f). As a result, a two-level reduction in the defendant's offense level is appropriate pursuant to Guideline § 2D1.1(b)(6) provided that the Court determines that the defendant's offense level is 26 or greater. Under Guideline § 5C1.2 and 18, United States Code, Section 3553(f), if the Court agrees that the defendant has satisfied the criteria set forth above, the Court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence. If, prior to sentencing, however, the government learns that the defendant has not satisfied the criteria set forth in the above provisions, the government is free to argue that the defendant does not qualify for sentencing under Guideline § 2D1.1(b)(6) and § 5C1.2, and 18, United States Code, Section 3553(e).

(f) The defendant and his attorney and the government acknowledge that the above calculations are preliminary in nature and based on facts known to the government as of the time of this Agreement. The defendant understands that the Probation Department will conduct its own investigation and that the Court ultimately determines the facts and law

relevant to sentencing, and that the Court's determinations govern the final Sentencing Guidelines calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations.

7. Errors in calculations or interpretation of any of the guidelines may be corrected by either party prior to sentencing. The parties may correct these errors or misinterpretations either by stipulation or by a statement to the probation office and/or court setting forth the disagreement as to the correct guidelines and their application. The validity of this Agreement will not be affected by such corrections, and the defendant shall not have a right to withdraw his plea on the basis of such corrections.

8. Defendant understands that, in imposing the sentence, the Court will be guided by the United States Sentencing Guidelines. The defendant understands that the Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9. Defendant understands the count to which he will plead guilty carries the following penalties: a maximum penalty of 40 years' imprisonment, a mandatory minimum of five years' imprisonment, a maximum fine of $2,000,000, and a term of supervised release of not less than four years and up to life, which the Court may specify.

10. The defendant understands that in accord with federal law, Title 18, United States Code, Section 3013, upon entry of judgment of conviction, the defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty

imposed. The defendant agrees to pay the special assessment of $100 at the time of sentencing with a check or money order made payable to the Clerk of the U. S. District Court.

11. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

(a) If defendant persisted in a plea of not guilty to the charges against him, he would have the right to a public and speedy trial. The trial could be either a jury trial or a trial by the judge sitting without a jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

(b) If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent, and that it could not convict him unless, after hearing all the evidence, it was persuaded of defendant's guilt beyond a reasonable doubt.

(c) If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded of defendant's guilt beyond a reasonable doubt.

(d) At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court.

(e) At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

12. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraph. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights. Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial.

13. Defendant is also aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging this, the defendant knowingly waives the right to appeal any sentence within the maximum provided in the statute(s) of conviction (or the manner in which that sentence was determined), in

exchange for the concessions made by the United States in this Plea Agreement. The defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation.

14. Defendant understands that the indictment and this Plea Agreement are matters of public record and may be disclosed to any party.

15. Defendant understands that the United States Attorney's Office will fully apprise the District Court and the United States Probation Office of the nature, scope and extent of defendant's conduct regarding the charge against him, and related matters, including all matters in aggravation and mitigation relevant to the issue of sentencing.

16. At the time of sentencing, the government shall recommend a sentence within the applicable guideline range.

17. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose the maximum penalties as set forth in paragraph 9 above. However, the sentencing court is obligated to consult and take into account the Sentencing Guidelines in imposing a reasonable sentence.

17. After sentence has been imposed on the count to which defendant pleads

11

guilty as agreed herein, the government will move to dismiss the remaining count of the indictment as to this defendant.

18. Defendant understands that his compliance with each part of this Plea Agreement extends throughout and beyond the period of his sentence, and failure to abide by any term of the Plea Agreement is a violation of the Agreement. He further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute the defendant not subject to any of the limits set forth in this Agreement, or to resentence the defendant. The defendant understands and agrees that in the event that this Plea Agreement is breached by the defendant, and the Government elects to void the Plea Agreement and prosecute the defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

19. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

20. Defendant agrees this Plea Agreement shall be filed and become a part of the record in this case.

21. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _April 25, 2006_

_____
PATRICK J. FITZGERALD
United States Attorney

_____
JUAN RODRIGUEZ
Defendant

_____
THOMAS D. SHAKESHAFT
Assistant United States Attorney

_____
GERALD COLLINS
Attorney for Defendant